IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN HAYNES,<br><br>    Plaintiff,<br><br>v.<br><br>BOB BLUM and TIM ADENAYSA,<br><br>    Defendants. | Case No. 3:19-CV-912-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendant Bob Blum. (Doc. 71). Plaintiff Brian Haynes filed a timely response in opposition. (Doc. 75). For the following reasons, the motion is denied.

### FACTS

Haynes, an inmate of the Illinois Department of Corrections who is currently housed at Pinckneyville Correctional Center, filed this action on August 21, 2019, alleging that officials there violated his constitutional rights. (Doc. 1). Specifically, in his amended complaint, Haynes alleges Defendants were deliberately indifferent in treating his ankle injury in violation of the Eighth Amendment. (Doc. 27).

As relevant to the present motion, Haynes alleges that on March 26, 2018, he tore his Achilles tendon while playing basketball. (*Id.* at p. 8). Haynes was escorted to the healthcare unit in a wheelchair because he could not put pressure on the leg. (*Id.*). He was examined by a nurse, who recommended that Haynes see Defendant Dr. Blum. (*Id.*).

Dr. Blum examined Haynes's ankle and concluded he had an ankle sprain. (*Id.*). Haynes told Dr. Blum he thought the injury was more serious than a sprain because he heard a loud pop. (*Id.*). Dr. Blum then ordered an x-ray of Haynes's ankle. (*Id.*). On April 10, 2018, a nurse informed Haynes that he had no fractures or dislocations. (*Id.*).

On May 26, 2018, Haynes filed an emergency grievance in which he stated that on March 26, 2018,[1] he hurt his ankle while playing basketball. (Doc. 72-1 at pp. 5-6). He was running when his leg popped, which made a loud sound. (*Id.*). He instantly fell to the ground and had to be wheeled to the Healthcare Unit, where "they gave me an x-ray." (*Id.*). He then stated that he was given crutches and had to use them for a little over a month, still unable to walk on his ankle. (*Id.*). When he was informed that there were no fractures, Haynes asked the nurse for an MRI. (*Id.*). The nurse told him he would have to ask the doctor for an MRI during a follow-up visit. (*Id.*). On May 19, 2018, Haynes saw a different doctor for his follow-up visit, who said his ankle looked fine, it was just a sprain, and he did not need an MRI. (*Id.*). As relief, Haynes requested an MRI, a correct diagnosis, and proper treatment. (*Id.*).

On May 31, 2018, the Warden received the emergency grievance. (*Id.*). That same day, the Warden determined the grievance was not an emergency and directed Haynes to submit the grievance in the normal manner. (*Id.*). The counselor received the grievance on June 1, 2018, and responded on July 7, 2018, noting that, per the Healthcare Unit Administrator, Haynes had been seen by a doctor and his x-rays showed no fractures.

---

[1] The grievance actually states March 6, 2018, but Defendant acknowledges the injury occurred on March 26, 2018, and that Haynes must have inadvertently wrote 6 instead of 26.

(*Id.*). The counselor further stated that Haynes had been treated appropriately for a sprained ankle, and if his ankle is hurting, he should submit a request for nurse sick call. (*Id.*). The Grievance Officer issued a report on July 16, 2018, recommending the grievance be denied after a review of all available information. (*Id.* at p. 4). The Warden concurred in the denial of the grievance on August 10, 2018. (*Id.*). Haynes then appealed the denial to the Administrative Review Board (ARB) on August 19, 2018. (*Id.*). The ARB received the appeal on August 23, 2018, and denied the appeal on September 17, 2018. (*Id.* at p. 3). The ARB concluded that Haynes's medical issue was treated appropriately by the facility and that he should address any current medical issues via the sick call process. (*Id.*).

## LEGAL STANDARD

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

"To exhaust remedies, a prisoner must file complaints and appeals in the place,

and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. Under *Pavey v. Conley*, "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008). Because there are no disputed issues of fact, the Court finds that no evidentiary hearing is required in this case.

*Illinois Administrative Code*

The grievance procedure for inmates of the IDOC is laid out in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance form must contain factual details regarding what happened, when, where, and the name of each person who involved in the complaint. *Id.* at 504.810(c). While this provision does not preclude an offender from filing a grievance when the names of individuals are not known, he or she must include as much descriptive information about the person as possible. *Id.*

If the inmate's grievance involves an emergency, the grievance is forwarded directly to the Warden. *Id.* § 504.840. If it is determined that a substantial risk of imminent personal injury or other serious or irreparable harm exists, the grievance process must be expedited. *Id.* § 504.840. If the Warden determines the grievance should not be handled on an emergency basis, the offender shall be notified in writing that he or she may

resubmit the grievance as non-emergent, in accordance with the standard grievance process. *Id.*

Grievances that are unable to be resolved through the counselor are then sent to the Grievance Officer. *Id.* at § 504.820(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." *Id.* at § 504.830(e). The Chief Administrative Officer then reviews the findings and recommendation of the Grievance Officer and advises the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the response from the Chief Administrative Officer, he or she can file an appeal the decision to the Administrative Review Board. *Id.* at § 504.850(a). The appeal must be received by the ARB within 30 days after the date of the CAO's decision. *Id.* The ARB then must submit to the Director a written report of its findings and recommendations. *Id.* at § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(e).

## DISCUSSION

Defendant Dr. Blum does not dispute that Haynes submitted a grievance in the appropriate timeframe and manner. Dr. Blum further admits that, while Haynes does not actually specify Dr. Blum by name in his grievance, there is enough information to identify him because Haynes provides the date of treatment and the type of treatment

received from Dr. Blum, which corresponds with the information in Haynes's medical records. Instead, Dr. Blum argues that the grievance does not describe any act or omission on his part that would lead to Haynes filing the grievance. Dr. Blum asserts that Haynes's sole statement that "they gave me an x-ray. I was given crutches" is insufficient to describe any sense of dissatisfaction with Dr. Blum.

In response, Haynes argues that Dr. Blum was the first doctor to diagnose him with a sprain before ruling out a fracture or other injury, and that he showed Dr. Blum the injury was in the area of the Achilles tendon. (Doc. 75). He also heard a loud pop, but yet Dr. Blum only ordered an x-ray instead of an ultrasound to rule out a tear.

While Defendant is correct that Haynes did not specifically state in his grievance why he was dissatisfied with Dr. Blum, a reading of the grievance as a whole clearly indicates that Haynes was complaining about Dr. Blum's failure to do anything more than diagnose him with a sprained ankle. He stated that his leg made a loud pop while playing basketball, he fell to the ground, and he could not walk on his injured leg. Dr. Blum then gave him an x-ray and crutches, which he used for more than a month. When he was finally seen for a follow-up a month and a half later, he again was told it was just a sprain and that no MRI was needed. As relief, Haynes requested an MRI, a proper diagnosis, and proper treatment—indicating that he did not believe he had received appropriate medical treatment by the doctors that had treated him to date, including Dr. Blum.

The Illinois Administrative Code requires than an offender's grievance contain factual details regarding each aspect of the complaint, including what happened, when,

where, and the name of each person who is the subject of or who is otherwise involved in the complaint. Haynes's grievance did so. Although perhaps not stated as eloquently as Dr. Blum would prefer, the grievance contains the same factual allegations that Haynes later raises in his amended complaint. Because Haynes has met all requirements of the Illinois Administrative Code, he has fully exhausted his grievance against Dr. Blum.

## CONCLUSION

For these reasons, the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendant Bob Blum (Doc. 71) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:** May 18, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**