IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRIAN HAYNES,

    Plaintiff,

v.

BOB BLUM and TIM ADESANYA,[1]

    Defendants.

Case No. 19-cv-912-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Brian Haynes, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Haynes alleges that Defendants Bob Blum and Tim Adesanya were deliberately indifferent in treating an Achilles tendon injury in violation of the Eighth Amendment. He was allowed to proceed on the following two counts:

> Count 1:   Bob Blum and Tim Adesanya were deliberately indifferent in treating Haynes's ankle injury.
>
> Count 2:   Defendants' actions amounted to intentional infliction of emotional distress.

(Doc. 30, p. 4).

This matter is currently before the Court on a motion for summary judgment filed by Blum and Adesanya (Docs. 84, 85). Haynes filed a response (Doc. 87) in opposition to the

---

[1] Defendant Adesanya has identified himself by his proper name (Doc. 65). The Clerk of Court is DIRECTED to CORRECT the docket to reflect Adesanya's properly spelled name.

motion.²

## BACKGROUND

On March 26, 2018, while on the yard playing basketball at Pinckneyville, Haynes injured his right ankle (Doc. 85-4, p. 12). Haynes was escorted to the healthcare unit in a wheelchair (*Id.*). He first saw an unidentified nurse, and she scheduled him to see Nurse Practitioner ("NP") Blum (*Id.* at pp. 12-13; Doc. 85-1, p. 1). He saw NP Blum the same day (Doc. 85-3, pp. 13-14). NP Blum noted that Haynes was going for a layup and stepped on a foot coming down from the shot (*Id.* at pp. 13-14, 33-34). NP Blum examined the ankle and noted that the ligament was swollen (*Id.*; 85-1, p. 1). He noted Haynes could wiggle his toes and there was no discoloration (*Id.*). He identified a pulse, and the capillary refill time was normal (*Id.*). NP Blum testified that he did not see any signs or symptoms of issues with Haynes's Achilles tendon. He did not note any swelling of the tendon, discoloration, or a limited range of motion (Doc. 85-1, p. 2).

Based on his examination, NP Blum diagnosed Haynes with a sprained ankle (Docs. 85-3, pp. 13-14; 85-1, p. 1). NP Blum ordered x-rays of the right ankle, and provided Haynes with an ace wrap, crutches, and pain medication (Doc. 85-3, p. 14; 85-4, pp. 13-14). He ordered rest, elevation, and ice of the injured area and gave Haynes a low bunk, low gallery permit for two weeks. He also noted that there would be a follow-up appointment in two weeks (Doc. 85-3, p. 14). NP Blum had no further contact with Haynes after March 26, 2018; he took a leave of absence shortly thereafter (Doc. 85-1, p. 2).

---

² Haynes later filed an affidavit (Doc. 91), but the affidavit merely states that he wished to give a relative permission to review his case. The affidavit does not provide any relevant information in response to the dispositive motion.

Haynes had x-rays of his ankle taken the same day after his visit with NP Blum (Docs. 85-3, p. 12; 85-4, p. 14). The x-rays were unremarkable and found no sign of fracture or dislocation (*Id*. at p. 31). The soft tissue was also unremarkable (*Id*.).

On May 19, 2018, Haynes saw Physician's Assistant ("PA") Adesanya for a follow-up of his ankle injury (Doc. 85-4, pp. 15-17). Haynes testified that he first met with a nurse and showed her a lump on the back of his heel (*Id*.; 85-3, p. 12). The medical records document a nurse call line visit with Haynes on May 11, 2018 (Doc. 85-3, p. 12). The nurse noted that Haynes was supposed to follow-up with the nurse practitioner for his injury, and the follow-up appointment would be scheduled (*Id*.).

During the follow-up appointment, Haynes testified that he showed PA Adesanya a lump on the back of his heel, told Adesanya he thought he had a torn Achilles tendon, and requested an MRI (Doc. 85-4, p. 16). He also told PA Adesanya he heard a loud pop when he experienced his injury (*Id*. at pp. 16-17). PA Adesanya examined Haynes's ankle (Doc. 85-2, pp. 1-2). Haynes testified that PA Adesanya directed him to wiggle his feet (Doc. 85-4, pp. 16-17). PA Adesanya noted no swelling or acute distress. Haynes could move his foot toward and away from his shin, and his ankle had full range of motion with no impediments (Docs. 85-2, pp. 1-2; 85-3, p. 17). PA Adesanya determined that the ankle had healed to a point that no additional treatment was necessary, but he did prescribe Tylenol to be taken as needed (*Id*. at p. 2; 85-3, p. 17). PA Adesanya testified he observed no signs of an issue with Haynes's Achilles tendon because he did not note any swelling, discoloration, or limited range of motion (Doc. 85-2, p. 2). Haynes testified that PA Adesanya "kicked [him] out" of the office because Adesanya said he had a sprained ankle, and Haynes kept talking about his injury (Doc. 85-4, p. 17). Haynes did not see PA Adesanya after the May 2018 appointment

(*Id*. at pp. 18-19). Adesanya was employed at Graham Correctional Center, only occasionally treated inmates at Pinckneyville, and had no further interactions with Haynes (Doc. 85-2, pp. 1-2).

Haynes testified that in May 2018, his ankle still hurt (Doc. 85-4, p. 19). The ankle was "hot," hard to walk on, and "real sore" when he walked on it (*Id*.). He did not put in any further sick call requests regarding his ankle after his follow-up with PA Adesanya (*Id*.). He did write a grievance to the warden asking for an MRI (*Id*.).

On August 20, 2018, Haynes saw a nurse for his injury (Docs. 85-3, p. 23; 85-4, p. 20). He noted that he injured his right ankle in March while playing basketball (*Id*.). The nurse noted limited range of motion, a protruding bump on his ankle, and pain while walking (Doc. 85-3, p. 23). He was referred to a doctor for the "deformity" (*Id*.). On August 28, 2018, Haynes saw NP Dearmond for a "deformed ankle" (Doc. 85-3, p. 25). Dearmond noted a knot, pain in his Achilles tendon, and an Achilles deformity (*Id*.). Dearmond scheduled Haynes for an ultrasound (*Id*. at pp. 25-27; 85-4, p. 20). The ultrasound showed a possible tear of his Achilles tendon (Doc. 85-3, p. 49). A subsequent MRI showed a partially torn tendon (*Id*. at pp. 50, 64-66). He was approved for surgery (*Id*. at pp. 68-70, 72, 74-76). On February 11, 2019, Haynes had surgery to repair the tendon (*Id*. at pp. 77-79, 81).

## LEGAL STANDARDS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(a)). A genuine

issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enter., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, a district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542 (7th Cir. 2014).

### B. Deliberate Indifference

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("[D]eliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm— not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). The first prong that must be satisfied is whether the prisoner has shown he has an objectively serious medical need.

*Arnett*, 658 F.3d at 750. *Accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 836 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm.") (internal quotation marks omitted).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno*, 414 F.3d at 653. A plaintiff need not show the individual literally ignored his complaint, just that the individual was aware of the serious medical condition and either intentionally or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). The standard is a high hurdle, requiring a "showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012).

## ANALYSIS

### A. Deliberate Indifference

Assuming that Haynes suffered an injury to his Achilles tendon in March 2018, Haynes fails to offer any evidence to suggest that the misdiagnosis of his tendon injury as a sprained ankle amounted to deliberate indifference.[3] Blum and Adesanya saw Haynes on

---

[3] For purposes of this motion, the Court will assume that Haynes had a torn Achilles tendon which amounts to a serious medical need. Although Defendants contend that Haynes failed to demonstrate that he had a torn Achilles tendon in March and May 2018, there is enough evidence in the record to create an issue of fact as to this issue. There is an injury report from March 2018 suggesting a fall while playing basketball (Doc. 85-3, pp. 33-34), and the notes from his August 28, 2018, visit with Dearmond indicate the injury stemmed from his March 2018 basketball injury (*Id*. at p. 25). The Court also does not find that Haynes's statements regarding the injuries contradict each other as Defendants argue (*Id*.

only one occasion each. On March 26, 2018, Blum examined Haynes immediately after his injury. He examined the ankle and noted swelling but no discoloration. He noted Haynes could wiggle his toes and that the foot had a pulse (Doc. 85-3, pp. 13-14). He diagnosed Haynes with a sprained ankle. Blum testified that he did not believe that Haynes suffered from an Achilles injury because he did not see any signs or symptoms that would indicate an issue with the tendon. He did not see swelling of the tendon, discoloration, or a limited range of motion (Docs. 85-1, p. 2). Similarly, PA Adesanya saw Haynes for a follow-up on one occasion and found no swelling or restriction in his range of motion (Doc. 85-2, pp. 1-2). He also diagnosed Haynes with a sprained ankle and testified that he did not observe the typical signs or symptoms of a torn Achilles tendon (*Id.*).

Even if the two practitioners misdiagnosed Haynes and he was suffering from an injury to his tendon, the misdiagnosis was, at most, negligence—which does not amount to deliberate indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (Noting that medical malpractice, negligence, or gross negligence does not amount to deliberate indifference. "[F]or instance, [it is not enough] that a doctor should have known that surgery was necessary; rather, the doctor must know that surgery was necessary and then consciously disregard that need in order to be held deliberately indifferent."); *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (collecting cases). Haynes fails to present any

---

at pp. 13, 68). His statement to his surgeon, Dr. Morgan, that he injured it when playing basketball when he took off running is not completely contradictory to injuring the ankle during a layup, and at the very least creates an issue of fact (*Id.*). Haynes states in his response that he never told medical staff that he was going for a layup as stated in his medical records (Doc. 87, p. 1). Further, Haynes informed Dr. Morgan that he injured the ankle nine months prior which would have been in March 2018 (*Id.*). There are also no incident reports or medical records to suggest a subsequent, separate injury to the Achilles as Defendants suggest in their motion.

evidence that either practitioner's misdiagnosis was deliberate indifference. It is clear from the medical records that both Blum and Adesanya examined Haynes. They checked his ankle and his range of motion. They both determined that Haynes suffered from a sprain as opposed to a torn tendon based on their observations. Haynes fails to offer any evidence to suggest that this determination, even if incorrect, was "a substantial departure from accepted professional judgment, practice, or standards." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008). Nor has he offered any evidence that suggests "no minimally competent professional would have responded" to Haynes's injury in the way that both practitioners did in this case. *Id.* at 894-95 (quoting *Collignon v. Milwaukee Cty.*, 163 F.3d 982, 988 (7th Cir. 1998)). There is no evidence to suggest either practitioner knew that Haynes had a torn tendon.

In his response, Haynes takes issue with only being prescribed an x-ray and not an MRI. He believes that Defendants failed to follow proper protocol or Wexford policies for an Achilles tear, arguing in his response that neither Blum nor Adesanya "went through the procedures" to rule out other possible injuries including a torn Achilles. He believes that procedure should have included an MRI. He also argues that he pointed out the lump, noted that the pain was coming from the area of his Achilles, and that he told them both about a pop he heard when he injured the ankle. Haynes argues that Defendants ignored his concerns and did not take any steps to rule out a possible torn Achilles.

But the record does not reflect that Defendants ignored Haynes's concerns. They examined him and used their medical judgment to determine he suffered from a sprain. Without something more, the mere "mistake in professional judgment cannot be deliberate indifference." *Whiting*, 839 F.3d at 662. Although Haynes believes an MRI was necessary and proper "protocol" for an injury to his Achilles tendon, Defendants diagnosed him with a

sprain based on their professional judgment. Blum testified that an x-ray was typical treatment for a sprained ankle. Haynes fails to point to anything in the record suggesting the failure to order an MRI was a substantial departure from professional practice or that it amounted to deliberate indifference. Both Defendants provided him with care based on the diagnosis that they made. The evidence presented by Haynes is insufficient to show that Defendants acted with reckless disregard to his injury. The evidence only demonstrates that, at most, they made a mistake in their determination; nothing in the record demonstrates that determination was a substantial departure from professional judgment. Thus, Defendants are entitled to summary judgment.

### B. Intentional Infliction of Emotional Distress

Similarly, the Court finds that Defendants are also entitled to summary judgment on Haynes's state law claim for intentional infliction of emotional distress. In order to demonstrate a claim, Haynes must prove the following:

> (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress and (3) the conduct must in fact cause severe emotional distress.

*Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). The conduct must "go beyond all bounds of decency and be considered intolerable in a civilized community." *Id*. As discussed above, there is no evidence that Blum's and Adesanya's actions in diagnosing and treating Haynes's injury fell outside of professional standards. Thus, there is simply no evidence that the misdiagnosis went "beyond all bounds of decency." *Honaker*, 256 F.3d at 490.

### CONCLUSION

For the reasons stated above, the summary judgment motion (Docs. 84 and 84) by

Blum and Adesanya is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

    **IT IS SO ORDERED.**

    **DATED: January 30, 2023**

                                                    _____
                                                  **NANCY J. ROSENSTENGEL**
                                                  **Chief U.S. District Judge**